**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

OWEN HARTY, Individually,        :
                           :

         Plaintiff,       :

                           :       CIVIL ACTION

        v.              :

                           :

BURLINGTON COAT FACTORY OF    :

PENNSYLVANIA, L.L.C.,        :       No.  11-01923

                           :

         Defendant.      :

                           :

_____ :

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                          **JUNE 16, 2011**

      Presently before the Court is a "Motion to Dismiss Plaintiff's Complaint Pursuant to

Federal Rules of Civil Procedure 12(b)(1)[1] and 12(b)(6)[2]" filed by Defendant, Burlington Coat

Factory, L.L.C. ("Burlington Coat Factory").  For the following reasons, Burlington Coat

Factory's Motion will be denied.

## I.      FACTS

      Plaintiff, Owen Harty ("Harty") is a Florida resident who is paralyzed from the waist

down and bound to ambulate in a wheelchair.[3]  By trade Harty is a licensed private investigator, a

weapons handling and safety instructor, and a certified firearms instructor.  He brings this suit

---

[1] Rule 12(b)(1) allows a party to raise the defense of lack of subject matter jurisdiction by
motion.  Fed. R. Civ. P. 12(b)(1).

[2] Rule 12(b)(6) allows a party to raise the defense of failure to state a claim upon which
relief may be granted by motion.  Fed. R. Civ. P. 12(b)(6).

[3] All facts, unless noted otherwise, have been taken from Harty's Complaint or Affidavit.

individually and on behalf of all others similarly situated for alleged violations of the Americans

with Disabilities Act, 42 U.S.C. § 12181 et seq (the "ADA"),[4] which he encountered at

Burlington Coat Factory's store No. 07 (the "Property"), located in Clifton Heights,

Pennsylvania. He is a licensed firearms safety instructor and he is also an ADA "tester."[5]

Harty's proclaimed purpose as a tester is to assert his civil rights and to monitor, ensure, and

determine whether places of public accommodation are in compliance with the ADA.

On an unspecified date, Harty visited the Property, and he claims that he encountered

architectural barriers, which discriminate against him on the basis of his disability, and which

also endangered his safety. In particular, Harty alleges the following violations of the ADA:

1.      Where posted, parking signs at the designated accessible parking spaces were not mounted at sufficient heights in violation of section 4.6.4 of the ADAAG;[6]

2.      Disabled use spaces did not have compliant access aisles, in violation of

---

[4] Title III of the ADA provides:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

[5] Testers are qualified individuals with disabilities who visit places of public accommodation to determine their compliance with Title III. Kelly Johnson, Testers Standing up for Title III of the ADA, 59 Case. W. Res. L. Rev. 683, 685 (2009) (citing Lucibello v. McGinley, No. 2:07-cv-217-FtM-34SPC, 2008 WL 398981, at *2-3 (M.D. Fla. Feb. 12, 2008)).

[6] The Access Board's ADA Accessability Guidelines (ADAAG) serve as the minimum baseline for the ADA Standards, which govern the construction and alteration of places of public accommodation, commercial facilities, and state and local government facilities. http://www.access- board.gov/ada/. The guidelines and standards are very similar, but only the standards have legal authority. Id.

section 4.1.2 and 4.6.3 of the ADAAG;

3. Curb ramps contained excessive slopes, side slopes, or cross slopes in violation of sections 4.7.2. and 4.7.5. of the ADAAG;

4. There was no continuous path of travel connecting all essential elements of the Property in violation of sections 4.3.1 and 4.3.2 of the ADAAG;

5. The restrooms violated section 4.16 of the ADAAG;

6. Grab bars in the restroom stalls did not comply with Sections 4.17.6 and 4.26 of the ADAAG;

7. Urinals did not comply with Section 4.18 of the ADAAG;

8. The restrooms did not comply with Section 4.24 of the ADAAG;

9. Mirrors in the restrooms were in violation of the requirements provided for in Section 4.19 of the ADAAG;

10. Dispensers in the restroom violated Section 4.27 of the ADAAG;

11. A changing area did not comply with requirements of the ADAAG.[7]

Harty alleges that all of the alterations necessary to effect compliance with the ADA are readily achievable. As a result of the various infringements listed above, Harty claims that he and others similarly situated suffer direct and indirect injury and will continue to do so until Burlington Coat Factory is compelled to comply with the requirements of the ADA. Moreover, Harty alleges that Burlington Coat Factory's non-compliance amounts to discrimination under the ADA, because it denied him access to, and full enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the Property.

Though he lives in Florida, Harty claims that he would like to and, intends to return to the

---

[7] This list is not exhaustive. Harty claims that he requires an inspection of the Property to uncover additional violations.

Property for two purposes: (1) to avail himself of Burlington Coat Factory's goods and services, and (2) to determine whether the property has been made ADA compliant. Furthermore, Harty asserts that he plans to attend a gun show in Philadelphia in September 2011 and would like to return to the Property at that time, however he is presently deterred from revisiting it because of the "discriminatory conditions" existing thereupon. According to Harty, it would be a futile effort to attempt to revisit the Property if he wishes to do so free from discrimination.

Harty instituted this lawsuit by filing a Complaint on March 18, 2011, seeking declaratory and injunctive relief along with attorney's fees, costs, and litigation expenses. On April 20, 2011, Burlington Coat Factory filed the instant Motion arguing that Harty lacks standing and that he has, furthermore, failed to state a claim upon which relief may be granted pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively.

## II.    STANDARD OF REVIEW

### A.    Motion to Dismiss Pursuant to Rule 12(b)(1)

The concept of standing is an integral part of "the constitutional limitation of federal-court jurisdiction to actual cases or controversies." Hagan v. United States, 2002 WL 338882, at *4 (E.D. Pa. 2002) (citing Simon v. Eastern KY Welfare Rights Organization, 426 U.S. 26, 41-42 (1976)). A motion to dismiss for want of standing implicates the court's subject matter jurisdiction and, is therefore appropriately brought under Federal Rule of Civil Procedure 12(b)(1). Id. (citing Miller v. Hygrade Food Prods. Corp., 89 F. Supp. 2d 643, 646 (E.D. Pa. 2000)). "Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims and they must be dismissed." Common Cause of PA v. Pennsylvania, 558 F.3d 249, 257 (3d Cir. 2009) (citing Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 188

4

(3d Cir. 2006)).

The "irreducable constitutional minimum of standing contains three elements." <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992). First, the plaintiff must have suffered an injury in fact- an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. <u>Id.</u> (internal citations omitted). A particularized injury is one that affects the plaintiff in a personal and individual way. <u>Id.</u> at n.1. Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be "fairly . . . traceable to the challenged action of the defendant and not th[e] result [of] the independent action of some third party not before the court." <u>Id.</u> at 560-61 (citing <u>Simon</u>, 426 U.S. at 41-42). Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." <u>Id.</u> (citing <u>Simon</u>, 426 U.S. at 38).

Furthermore, because the sole relief available for a defendant's alleged violation of the ADA is prospective injunctive relief, he must demonstrate a "real and immediate threat" of injury in order to satisfy the "injury in fact requirement." <u>Cottrell v. Goods Wheels, et al.</u>, C.A. 08-1738 (RKB), 2008 WL 4792546, at *3 (D.N.J. Oct. 31, 2008) (citing <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 104-04 (1983)). The Third Circuit has held that "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." <u>Id.</u> (citing <u>Brown v. Fauver</u>, 819 F.2d 395, 400 (3d Cir. 1987)). In order to obtain standing for prospective relief, Plaintiffs must establish a real and immediate threat that they would again be exposed to the alleged violations of their lawful rights. <u>Id.</u> (citing <u>Brown</u>, 819 F.2d at 400). For example, in <u>Lujan</u>, the court found that "some day" intentions- without any description of concrete plans, or even any speculation of when the some day will be-do not support a finding of

actual or imminent injury.  Id. (citing Lujan, 504 U.S. at 564).  In the context of Title III of the

ADA, the Third Circuit has held that the principles of standing are equally applicable.  Id. (citing

Doe v. Nat'l Bd. of Medical Examiners, 199 F.3d 146, 153 (3d Cir. 1999)).

Standing implicates both constitutional requirements and prudential concerns.  Id. at 560.

Prudential considerations impose additional limits on the class of persons who may invoke the

court's decisional and remedial powers.  Warth v. Seldin, 422 U.S. 490, 499 (1975).  "First,

when the asserted harm is a 'generalized grievance' shared in substantially equal measure by all

or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction."

Id. (citations omitted).  Second, even when the plaintiff has alleged injury sufficient to meet the

case or controversy requirement, the plaintiff must generally assert his own legal rights and

interests, and cannot rest his claim to relief on the legal rights or interests of third parties.[8]  Id.

(citations omitted).

The party invoking federal jurisdiction bears the burden of establishing all elements.  504

U.S. at 561 (citing FW/PBS, Inc. v. Dallas, 493 U.S. 215 (1990); Warth, 422 U.S. at 508).  Since

they are not mere pleading requirements but rather an indispensable part of the plaintiff's case,

each element must be supported in the same way as any other matter on which the plaintiff bears

the burden of proof, i.e., with the manner and degree of evidence required at the successive

stages of the litigation.  Id. (citations  omitted).  At the pleading stage, general factual allegations

of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we

_____

[8] Harty has satisfied the prudential requirements as he is asserting his own legal rights and interests, and his interest in remedying disability discrimination falls within the zone of interests the ADA was designed to address. See Brown v. Showboat Atlantic City Propco, LLC, et al., No. 08-5145, 2009 WL 690625, at *2 (D.N.J. March 11, 2009).

"presum[e] that general allegations embrace those specific facts that are necessary to support the claim." Id. (citations omitted).

## B. Motion to Dismiss Pursuant to Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). Under Rule 12(b)(6), the defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. CIV. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). In Bell Atl. Corp. v. Twombly, the Supreme Court stated that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. 544, 555 (2007). Following Twombly, the Third Circuit has explained that the factual allegations in the complaint may not be "so undeveloped that it does not provide a defendant the type of notice which is contemplated by Rule 8." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Moreover, "it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'" Id. (alteration in original) (quoting Twombly, 550 U.S. at 563 n.8). Furthermore, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level." Id. at 234 (quoting Twombly, 550 U.S. at 555). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Id. (quoting Twombly, 550 U.S. at 556).

Notwithstanding Twombly, the basic tenets of the Rule 12(b)(6) have not changed. The

Knit With v. Knitting Fever, Inc., No. 08-4221, 2009 U.S. Dist. LEXIS 30230, at *6 (E.D. Pa. Apr. 8, 2009). The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief, not detailed factual allegations. Phillips, 515 F.3d at 231. Moreover, when evaluating a motion to dismiss, the court must accept as true all well-pleaded allegations of fact in the plaintiff's complaint, and must view any reasonable inferences that may be drawn therefrom in the light most favorable to the plaintiff. Id.; Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III.  DISCUSSION

### A.  Proving an Injury in Fact Under Title III of the ADA

In regards to standing, the Parties only dispute whether Harty has sufficiently alleged the first element of standing-an injury-in-fact. Burlington Coat Factory asserts that Harty has failed to plead that he intends to return to the Property to fulfill the injury-in-fact prong of the standing analysis. (Mot. to Dismiss at 6.) Moreover, Burlington Coat Factory urges us to adopt a four-part test utilized by several district courts within the Third Circuit to determine whether Harty has sufficiently pled such intent.[9] (Id. at 7.) The Disabled Patrons of Am. v. City of Trenton,

---

[9] Courts in other jurisdictions have also applied the same four-factor test. Brown v. Showboat Atlantic City Propco, LLC, No. 08-5145 (NLH), 2010 WL 5237855, at *8, n.10 (D.N.J. Dec. 26, 2010) (citing Molski v. Arby's Huntington Beach, 359 F. Supp. 2d 938, 947 n.10 (C.D. Cal. 2005); Access 4 All v. Commercial P'ship, Ltd., No. 05-1307, 2005 WL 2989307, at *3 (N.D. Tex. Nov. 7, 2005); Betancourt v. Ingram Park Mall, L.P., No. SA-10-CV-029-XR, 2010 WL 3211092, at *7 (W.D. Tex. Aug. 10, 2010)). See also Judy v. Arcade, L.P., No. RDB 10-607, 2011 WL 345867, at *3 (D.Md. Feb. 2, 2011); Brown v. Grand Island Mall Holdings, Ltd., No. 09-3068, 2010 WL 489531, at *3 (D. Neb. Feb. 8, 2010) (quoting Kramer v. Midamco, 656 F. Supp. 2d 740, 747-51 (N.D. Ohio 2009)); Bodley v. Plaza Mgmt. Corp., 550 F.

No. 07-3165, 2008 WL 4416459 (D.N.J. Sept. 24, 2008) and <u>Dempsey v. Pistol Beef N Beer,</u>

<u>LLC,</u> No. 08-5454, 2009 WL 3584597 (D.N.J. Oct. 26, 2009) courts have both used the four-part

test to determine whether a plaintiff has alleged a concrete and particularized injury that is

capable of repetition. (<u>Id.</u>) That test consists of the following factors: (1) the plaintiff's

proximity to the defendant's place of public accommodation; (2) the plaintiff's past patronage;

(3) the definitiveness of the plaintiff's plan to return; and (4) the plaintiff's frequency of nearby

travel. <u>See</u> 2009 WL 3584597, at *4; 2008 WL 4416459, at *3.

In <u>Trenton,</u> the plaintiff used a wheel chair for mobility purposes and, like Harty, was also

an ADA tester. 2008 WL 4416459, at *1. Although the plaintiff was a resident of Ohio, she

alleged that she visited public accommodations in Trenton, New Jersey as a visitor and as a

tester, where she encountered various architectural barriers. <u>Id.</u> Regarding her intent to return to

the noncompliant public accommodations, she alleged that "independent of other subsequent

visits" she "intend[ed] to visit the premises annually" to monitor ADA compliance and

maintenance of the accessability features. <u>Id.</u> In addition, the plaintiff also alleged a "desire to

have access to the place of public discrimination free of illegal barriers to access." <u>Id.</u> at *3

(internal citations omitted). The defendant moved to dismiss the complaint for lack of subject

matter jurisdiction arguing that the plaintiff lacked standing, because she lacked proximity to the

facility, past patronage with the facility, definite plans to return to the facility, and had failed to

allege frequent travel to Trenton, New Jersey. <u>Id.</u>

Regarding the plaintiff's proximity to the public accommodation, the court held that a

distance of over 100 miles militated against finding a reasonable likelihood that the plaintiff

_____

Supp. 2d 1085, 1088 (D. Ariz. 2008) (internal citations omitted).

would suffer future harm.  Id. at *4 (citing Jones v. Sears, Roebuck, & Co., No. 05-0535, 2006 WL 2437905, at *3 (E.D. Cal. Nov. 29, 2006); Delil v. El Torito Restaurants, Inc., No. 94-3900, 1997 WL 714866, at *4 (N.D. Cal. June 24, 1997)).  Next, in regards to the plaintiff's past patronage, the court found that, having only visited once, a presumption against future injury applied unless the plaintiff could demonstrate a connection to the establishment, which the plaintiff had failed to do.  Id. at *5 (citing Molski v. Kahn Winery, 405 F. Supp. 2d 1160, 1164 (C.D. Cal. 2005)).  Furthermore, the court found that the plaintiff's allegations regarding a definite plan to return were too general, absent allegations showing a continuing connection to the place where the accommodations were located such as familial or business ties.  Id. at *6 (citing generally Access 4 All, Inc. v. Wintergreen Commercial P'ship, Ltd., No. 05-1307, 2005 WL 2989307 (N.D. Tex. Nov. 7, 2005); Access 4 All, Inc. v. Oak Spring, Inc., No. 04-75, 2005 WL 1212663 (M.D. Fla. May 20, 2005)).  Finally, the court found the plaintiff's allegations relating to her frequency of travel near the defendant's accommodations were insufficient as she had not alleged pre-existing business or familiar association with the area or an interest in returning to the area aside from testing the accommodations for ADA violations.  Id.  (citing Wilson v. Costco Wholesale, Corp., 426 F. Supp. 2d 1115, 1122 (S.D. Cal. 2006)).  However, rather than dismissing the complaint, the court granted the plaintiff ten days to submit an amended complaint with an affidavit to cure the deficient standing allegations.

In Dempsey, the plaintiff was a New Jersey resident, who was dependent on a wheel chair for mobility purposes.  2009 WL 3584597, at *1.  He alleged that he encountered various architectural barriers when he visited the defendant's restaurant, located in New Jersey.  Id.  The court applied the four-factor test employed by the Trenton court and found that the plaintiff had

not sufficiently pled his standing because he did not allege that he ever intended to return to the

defendant's restaurant and because he failed to address any of the remaining three factors of the

intent to return test.  Id. at *5.  Just as in Trenton, the court declined to dismiss the complaint,

and ordered the plaintiff to file an amended complaint instead.  Id.  The Dempsey plaintiff later

submitted an amended complaint alleging: (1) that he visited the defendant's property and was

denied proper and full access due to architectural barriers that are arguably in violation of the

ADA; (2) that the he desired and planned to visit the defendant's property in the future; (3) that

he lived an hour and a half from the defendant's property; (4) that he frequently passed the

defendant's property on his drives to Atlantic City; and (5) that due to his retirement, he and his

wife intended to travel to the defendant's property several times in the near future and planned to

do so indefinitely.  Dempsey, 2010 WL 2674436, at *4.  Accordingly, the court found that the

plaintiff had sufficiently pled standing in the amended complaint.  Id.

Here, Harty argues that his Complaint establishes standing "under the tests cited by

Defendant" but he also vigorously argues that the same test should not be applied to Title III

claims.  (Opposition at 7.)  In support of his argument that he has sufficiently pled his standing,

he cites to the Complaint and his Affidavit.  In his Complaint, he alleges that he plans to return to

the Property to avail himself of the goods and services offered to the public and to determine

whether the Property has been made ADA compliant.  (Compl. ¶¶ 5, 8.)  In his Affidavit he

alleges: (1) he constantly travels nationwide to attend gun shows throughout the country; (2) he

has visited Philadelphia four times in recent years; (2) he still visits Philadelphia to attend gun

shows and maintain his business and client contacts; (3) he lived in New York for many years

and traveled extensively throughout the area; (4) he intends to visit Philadelphia in September,

2011 to attend a gun show, shop, and sightsee; (5) he would like to return to the Property when he is in Philadelphia for the September gun show, but knows it to be a futile gesture as Burlington Coat Factory shows no intention to comply with the ADA; (6) he is presently deterred from visiting the Property because of its non-compliance with the ADA; and (7) he will visit the Property in September if it has been made ADA compliant.  (Harty Aff. ¶¶ 2, 3, 5.)

In addition, Harty argues that we should adopt a more liberal standard in regards to standing at the pleading stage as set forth in Brown v. Showboat Atlantic City Propco, LLC, et al., No. 08-5145, 2009 WL 690625 (D.N.J. March 11, 2009).  In Brown, the plaintiff was confined to a wheelchair and encountered difficulties due to the barriers on the defendant's property.  Id. at *1.  In his complaint, the plaintiff alleged that he visited the defendant's property, planned to visit the property again in the future, continued to desire to visit the property, and was going to visit the property again in the future.  Id.  The defendant moved to dismiss the complaint arguing that the plaintiff did not properly plead standing.  Id.  The court denied the motion and found that the plaintiff had alleged a likelihood of returning to the defendant's property by expressing a definite intention, thereby satisfying "all necessary standing requirements."  Id. at *1-2.  The Brown court emphasized that, at the pleading phase, "the level of specificity to avoid dismissal for lack of standing should not be 'exaggerated.'"  Id. at *2 (citing Cottrell, 2008 WL 4792546, at *3).  The court further stated that a motion to dismiss "is not the time to test the credibility and veracity of the averments in [the] plaintiff's complaint."  Id.  Furthermore, the court marked the plaintiff's definite intention to return as an important distinction from the Dempsey plaintiff's generally expressed intention to return.

We note that the Brown court did not expressly abandon the four-factor test, it merely

12

relaxed the level of specificity required at the pleading stage.  Id. at *3.  In fact, in deciding cross

motions for summary judgment, the court strictly adhered to the four-factor test enunciated in

Trenton and Dempsey.  See Brown, 2010 WL 5237855, at *8.  Furthermore, the Brown court

addressed the fact that denying the defendant's motion to dismiss did not nullify its right to

challenge the plaintiff's standing at a later stage of the case or relieve the plaintiff of his burden

of proving standing.  Id. at *3, n.2.  Thus, we will use the four-factor injury in fact test.

       1.     Harty's Proximity to the Property

Using the Trenton framework, we begin by considering Harty's proximity to the Property

to determine if he is likely to return.  Harty contends that he meets the proximity requirements,

and, in the alternative, that the "proximity test" is unconstitutional.[10]  (Opposition at 33.)  Third

Circuit district courts have remarked that "as the distance between a plaintiff's residence and a

public accommodation increases, the potential for the occurrence of future harms decreases."

Trenton, 2008 WL 4416459, at *4 (citing Molski, 405 F. Supp. 2d at 1163-64).  We agree that

such information may be informative, and, as such, we will include Harty's proximity to the

Property in our analysis.  As stated in Trenton, "courts have consistently maintained that a

distance of over 100 miles weighs against finding a reasonable likelihood of future harm."  Id.

(citing Jones, 2006 WL 2437905, at *3; Delil, 1997 WL 714866, at *4 ).

Harty is a resident of Broward County, Florida and the Property at issue is located in

Delaware County, Pennsylvania.  Thus, the distance between the plaintiff's residence and the

Burlington Coat Factory's Property well exceeds 100 miles.  Thus, we find that this factor

---

[10] Harty argues that the proximity test violates the Commerce Clause and the disabled
population's fundamental right to travel, but offers no legal authority for such claims.  Thus, we
find that these arguments are meritless.

weighs against Harty.  Although Burlington Coat Factory argues that the proximity factor is dispositive, we disagree.  The four-factor test is one of totality, and a finding in favor of Harty does not require alignment of all four factors.  Brown, 2010 WL 5237855, at *12.  Additionally, where the plaintiff has made out definitive allegations to return such as those in Brown, it may outweigh an adverse finding on one of the factors relating to the plaintiff's standing for the limited purposes of withstanding a Motion to Dismiss.  Brown, 2009 WL 690625, at *3.  Thus, we will consider the remaining three factors.

2.      Harty's Past Patronage

Regarding the plaintiff's past patronage, we find that Harty's one-time visit satisfies this factor at the pleading stage.  Section 12188(a)(1) of the ADA states that a person with a disability is not required to participate in a futile gesture if such person has actual knowledge that [a defendant] does not intend to comply with ADA provisions." 42 U.S.C.A. §12188(a)(1).  Accordingly, "it is sufficient for a plaintiff to allege that he has actual knowledge of architectural barriers and that but for noncompliance with ADA provisions, he would avail himself of the defendant's goods and services."   Trenton, 2008 WL 4416459, at *5 (citing Clark v. McDonald's Corp., 213 F.R.D. 198, 229 (D.N.J. 2003)).  However, in cases "where a plaintiff visits an accommodation only once, the lack of history of past patronage seems to negate the possibility of future injury at that location." Id. at *5 (citing Molski, 405 F. Supp. 2d at 1164).  In such a situation, "a presumption against future injury applies unless the plaintiff can show a connection to the establishment." Id. (citing Molski, 405 F. Supp. 2d at 1164).  A plaintiff may demonstrate a connection by demonstrating family ties or business connections with the city in which the accommodation is located. Id.  Here, Harty alleges that he would like to revisit the

Property when he returns to Philadelphia in September, 2011, but knows it to be a futile gesture as Burlington Coat Factory shows no intention to comply with the ADA. (Harty Aff. ¶ 5.) In addition, he alleges that he will definitely revisit once the Property has been made ADA compliant. (Id.) Furthermore, he alleges that he visits the area to develop and maintain his business contacts and that he intends to keep visiting for the same purpose. (Id. at ¶ 3). Thus, we find that Harty has demonstrated a sufficient intent to return and connection to the city in which the Property is situated.

### 3. Definitiveness of Harty's Plan to Return

Regarding the definitiveness of Harty's plan to return, we find that his allegations are sufficient to survive the instant Motion. To demonstrate a definite plan to return, it is sufficient that the plaintiff establish a likelihood that he has a desire to return. Trenton, 2008 WL 4416459, at *6 (citing Access 4 All v. 539 Absecon Blvd., No. 05-56-24, 2006 WL 1804578, at *3 (D.N.J. June 26, 2006)). Whether a plaintiff has familial ties or business connections to the area where the accommodation is situated provides insight into whether the plaintiff actually intends to return. Id. Harty alleges that he will return to the Property as a customer and as a tester.[11] (Compl. ¶ 8.) Moreover, he alleges that he will be in the nearby vicinity in September for professional reasons, that he would like to revisit the Property in September, and that he will revisit the Property in September if it has been made ADA compliant. (Harty Aff. ¶¶ 3, 5.)

_____

[11] Whether a plaintiff may satisfy the intent to return requirement if he visits the establishment solely as a tester has not previously been decided by courts in this Circuit. At least one district court in this jurisdiction has declined to reach the issue of "tester standing" where there was no reason to believe that the plaintiff's sole motivation in visiting the establishment was to test for ADA compliance. Clark, 213 F.R.D. at 227-28 (D.N.J. 2003). The Trenton court deemed it unnecessary to reach the issue of tester standing if it determined that the plaintiff had individual standing. Id. We will do the same.

Additionally, Harty alleges that he travels to Philadelphia to develop and maintain his business contacts. (Id. at ¶ 3). We are of the opinion that Harty's allegations relating to his past residency in New York and his past travels in and around that area are too remote to weigh in his favor in regards to his intent to return to the Philadelphia area. Nevertheless, we find that his alleged business ties with the area demonstrate the requisite level of definitiveness.

Burlington Coat Factory urges us to consider the fact that Harty has filed approximately 226 ADA cases since 2007. (Mot. to Dismiss at 2.) Courts disagree as to whether the litigation history of a plaintiff is relevant when considering whether a plaintiff has standing. Judy, 2011 WL 345867, at *5 (citing Arby's Huntington Beach, 359 F. Supp. 2d at 948) (finding that the filing of hundreds of lawsuits was not relevant to the standing determination at the initial pleading stage); Steven Brother v. Tiger Partner, LLC, 331 F. Supp. 2d 1368 (finding a plaintiff's professed intent to return to the fifty-four properties he had sued implausible); Wilson v. Costco Wholesale Corp., 426 F. Supp. 1115, 1123 (S.D. Cal. 2006) (holding that a plaintiff's litigation history was relevant-though not outcome determinative-where the plaintiff filed over eighty prior lawsuits)). The Third Circuit has not yet decided the issue. In our view, Harty's specific allegations relating to his business ties in the area and his professed, definite intent to return in September outweigh the number of lawsuits he has filed for standing purposes in this case. Moreover, when evaluating a motion to dismiss, the court must accept as true all well-pleaded allegations of fact in the plaintiff's complaint, and must view any reasonable inferences that may be drawn therefrom in the light most favorable to the plaintiff. Phillips, 515 F.3d at 231. Thus, if Harty says he plans to return and will return, we must accept those statements as true regardless of his other lawsuits.

4.     Harty's Frequency of Nearby Travel

Lastly, we must consider the frequency of Harty's travel near the Property.  Trenton, 2008 WL 4416459, at *3.  This factor weighs in favor of a plaintiff if he demonstrates either pre-existing business or familial ties within the area of the defendant's place of accommodation.  Brown, 2010 WL 5237855, at *11 (citing Trenton, 2008 WL 4416459, at *6).  Harty alleges that he has traveled to nearby Philadelphia four times in recent years.  (Harty Aff. ¶ 3.)  Beyond those four visits, Harty alleges that he travels to Philadelphia to attend gun shows and to maintain his business and client contacts.  (Id.)  For purposes of the instant Motion, we find that these allegations suffice.  For the foregoing reasons, we find that Harty has made out sufficient allegations to assert his standing.

**B.  Whether Harty has Pled with Sufficient Particularity**

1.     Prima Facie case under Title III of the ADA

Title III of the ADA prohibits discrimination against disabled individuals in places of public accommodation.  42 U.S.C.. § 12182(a).  To state a claim of disability discrimination under Title III of the ADA, "a plaintiff must show (1) discrimination on the basis of a disability, (2) in the full and equal enjoyment of goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation; (3) by the public accommodation's owner, lessor or operator."  Dempsey, 2009 WL 3584597, at *3 (citing Bowers v. Nat'l Collegiate Athletic Ass'n, 118 F. Supp. 2d 494, 514 (D.N.J. 2000)); see also Sharrow v. Bailey, 910 F. Supp. 187, 191 (M.D. Pa. 1995).  Discrimination under the ADA includes "a failure to remove architectural barriers . . . that are structural in nature, in existing facilities . . ."  42 U.S.C. §12182(b)(2)(A)(iv).

Burlington Coat Factory does not dispute Harty's disability, its ownership of the Property or that the Property is a place of public accommodation. Rather, it argues that Harty has not sufficiently pled that he has been discriminated against on the basis of his disability by being denied full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations at the Property. (Mot. to Dismiss at 11.) It further argues that Harty's allegation that he visited the store and "encountered architectural barriers at the Property which discriminate against him on the basis of his disability and have endangered his safety" are merely formulaic recitations and are not entitled to a presumption of truth. (Id.) Moreover, Burlington Coat Factory argues that Harty must describe how he encountered the barriers, how the barriers prevented him from access to the store and where the barriers were specifically located. (Id.) Without such information, Burlington Coat Factory contends that Harty's allegations are impermissibly vague to state a *prima facie* case of disability discrimination under Title III of the ADA. (Id.)

Harty argues that his allegations provide the notice required under Federal Rule of Civil Procedure 8(a) and that Burlington Coat Factory can answer his Complaint without additional information. (Opposition at 58.) Harty further contends that these "are areas that can be explored in discovery" and that Federal Rule of Civil Procedure 8(a)(2) only requires him to plead a "short and plain statement of the claim showing that [he] is entitled to relief," which, he argues, he has done. (Id.) In support of his argument he again cites to Brown, where the court found that the plaintiff had pled his injury with sufficient particularity though the plaintiff's complaint merely established that he "continue[d] to experience serious difficulty due to the barriers identified in his complaint." Brown, 2009 WL 690625, at *1.

We find that Harty has sufficiently alleged the second prong of a *prima facie* case under Title III of the ADA. He alleges that he "encountered numerous conditions that discriminated against [him] on the basis of his disability" such as disabled parking spaces that were too narrow, non-level spaces and aisles, a missing grab bar in the restroom, a misplaced grab bar in the restroom, an out of reach toilet paper dispenser, a mirror that was too high, a urinal that was too high, a misplaced sink in the restroom, a prohibitively high hand dryer in the restroom, and overcrowded merchandise aisles. (Harty Aff. ¶ 4.) More specifically, Harty alleges that the sink was completely unusable because he could not get his wheel chair underneath of it, the hand dryer was "out of reach" as was the toilet paper dispenser and that the aisles were "so badly crowded that it made it impossible to maneuver [his] wheel chair through much of the store." (Id.) Additionally, Harty alleges that these conditions presently deter him from visiting the Property despite his desire to return. (Compl. ¶¶ 5, 6.) For purposes of this instant Motion, we find that these allegations sufficiently indicate that the conditions deprived Harty of the full and equal enjoyment of goods, services, facilities, privileges, advantages or accommodations located at the Property.

2.    Whether Harty's Claims Are Limited to Barriers Affecting his Disability and Encountered by Him

Burlington Coat Factory argues that Harty's claims should be limited to barriers affecting his disability and to barriers he specifically encountered. (Reply at 6.) In support of this argument, it cites to Brother v. CPL Investments, Inc., 317 F. Supp. 2d 1358, 1368 (S.D. Fla. 2004). (Id.) Following a non-jury trial, the Brother court found that the disabled plaintiffs "did not have standing to complain about alleged barriers which are not related to their respective

disabilities." Id. at 1368 (citing Steger v. Franco, 228 F.3d 889, 893 (8th Cir. 2000); Ass'n for Disabled Americans, Inc. v. Concorde Gaming Corp., 158 F. Supp. 2d 1353 (S.D. Fla. 2001)). The court further held that the plaintiffs did "not have standing to complain about alleged barriers which they were unaware of at the filing of their Complaint." Id. (citing Access Now, Inc. v. South Florida Stadium Corp., 161 F. Supp. 2d 1357, 1365-66 (S.D. Fla. 2001); Resnick v. Magical Cruise Co., Ltd., 148 F. Supp. 2d 1298, 1302 (M.D. Fla. 2001)).

Harty does not address whether he may complain of violations not related to his disability. However, we find that he is limited to violations relating to his disability. See Steger v. Franco, Inc., 228 F.3d 889, 894 (8th Cir. 2000) (citing Lewis v. Casey, 518 U.S. 343, n.6 (1996) (considering only remedies that would redress limitation experienced by plaintiff)). Harty does contend that he is not limited to being entitled to complain of those violations known to him at the time he filed his Complaint. (Opposition at 57.) In support of his argument, Harty cites to Gregory v. Melrose Grp., No. Civ.A. 03-2414, 2003 WL 22928805 (E.D. La., Dec. 8, 2003), where the court allowed a plaintiff's complaint to encompass violations then unknown to the plaintiff. Id. at *4.

The Third Circuit has yet to decide this issue. Furthermore, our research indicates that only the Eighth and the Ninth Circuits have squarely addressed this issue. They both permit a plaintiff to complain of violations even if the plaintiff did not specifically encounter those violations. See Steger, 228 F.3d at 894 (8th Cir. 2000)); Pickern v. Holiday Quality Foods Inc., 293 F.3d 1133, 1138 (9th Cir. 2002). The Eighth Circuit has explained its position as one that seeks to avoid piecemeal compliance, inefficiency, and impracticality. 228 F.3d at 894. We agree with the Eighth Circuit's rationale. As such, we will follow the Eighth and Ninth Circuits

in this respect.

Thus, we hold that Harty's claims are limited to those violations relating to his disability but that he need not have specifically encountered those violations.

**IV.     CONCLUSION**

In conclusion, we find that Harty has sufficiently alleged his standing for purposes of surviving the instant Motion to Dismiss but expressly note that this ruling does not relieve Harty from proving his standing at successive stages of the litigation.  Furthermore, we hold that Harty's claims are limited to those relating to his specific disability but that he need not have specifically encountered those violations.

An appropriate Order follows.